IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 07-185 |
| | ) |
| AIMEE JONES, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 27th day of August, 2007, upon consideration of Defendant Aimee Jones' Motion to Dismiss Information (Document No. 7), filed in the above-captioned matter on June 4, 2007, and the Government's response thereto (Document No. 9), filed in the above-captioned matter on June 15, 2007,[1]

IT IS HEREBY ORDERED that said Motion is DENIED.

I.      **Background**

On July 20, 2005, Defendant was convicted by a jury of health care fraud, in violation of 18 U.S.C. § 1347(2), in Case No. CR04-317.  The Court subsequently sentenced her to a term of imprisonment of 24 months, to be followed by a term of supervised release of 3 years, ordered her to make restitution to the victim of her offense in the amount of $240,076.73, and ordered that she forfeit to the United States $194,216.25 and a motorcycle.

---

[1]      The Court also considered Defendant's Reply to Government's Response to Motion to Dismiss Information (Document No. 10), filed on June 19, 2007.

1

Defendant appealed her conviction and sentence and, pursuant to a December 28, 2006 Opinion, the Third Circuit Court of Appeals reversed her conviction and vacated her sentence, holding that the evidence was insufficient to establish health care fraud in violation of Section 1347(2).

On May 11, 2007, the Government filed an information in the present case, this time alleging that Defendant committed theft or embezzlement in connection with health care, in violation of 18 U.S.C. § 669. Defendant has moved to dismiss the information on grounds that, pursuant to the record in Defendant's trial in her previous case, which the parties have stipulated is the record in the instant case, the Government has not established that Progressive Medical Specialists ("Progressive"), the entity from which Defendant is alleged to have stolen or embezzled money, constitutes a health care benefit program, as required under Section 669.

## II.     Standard of Review

Generally, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the Government's evidence. However, in limited situations, such as where there is a stipulated record, the Court may consider such a motion. See United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000). In doing so, the Court must review the proposed stipulated record and determine whether that record contains

sufficient evidence to rule on the motion, and, if not, the Court should defer action until a more detailed evidentiary record is developed and allow Defendant to renew her motion at that time. See United States v. Wright, 194 F. Supp. 2d 287, 299 (D. Del. 2002). In any event, in reviewing the sufficiency of the evidence, the Court must view all evidence in the light most favorable to the Government and determine whether there is any evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt. See United States v. Gotti, 457 F. Supp. 2d 411, 421 (S.D.N.Y. 2006).[2]

It should be noted that the Court, in this case, ordered the parties to file position statements regarding what appears to be the central issue in this case - the corporate structure of Progressive.[3] Although the parties have filed these positions, the Court has determined that it can decide Defendant's motion based solely on the stipulated record, since, viewing all evidence in the light most favorable to the Government, a reasonable juror could

---

[2]     This is the same standard used in determining a motion challenging the sufficiency of the evidence under Federal Rule of Criminal Procedure 29(c). See United States v. McGuire, 178 F.3d 203, 206 n.2 (3d Cir. 1999) ("We apply a particularly deferential standard of review when deciding a sufficiency of the evidence challenge."); United States v. Seaton, 178 Fed. Appx. 172, 176 n.7 (3d Cir. 2006).

[3]     Specifically, the Court ordered the parties to file position statements regarding the legal business and/or corporate structure of Progressive Medical Specialists as that issue pertains to the issues in this case. The issues to be addressed were to include, but were not limited to, the parties' positions, with supporting documentation, regarding whether the Pittsburgh and Houston offices of Progressive are separately incorporated (or are otherwise separate legal entities), or whether they are both part of one legal entity.

conclude that Progressive is a health care benefit program beyond a reasonable doubt.

**III.     Discussion**

Section 669(a) provides:

> Whoever knowingly and willfully embezzles, steals, or otherwise without authority converts to the use of any person other than the rightful owner, or intentionally misapplies any of the moneys, funds, securities, premiums, credits, property, or other assets of a **health care benefit program**, shall be [punished as set forth in this section].

As noted, Defendant raises only one issue in her motion - whether Progressive is a "health care benefit program." Subsection (b) indicates that this term has the meaning set forth in 18 U.S.C. § 24(b). Section 24(b) provides:

> As used in this title, the term "health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

The Government, therefore, must establish beyond a reasonable doubt, as an element of the charged offense, that Progressive was a health care benefit program, as defined in Section 24(b).

The parties set forth arguments regarding whether Progressive's individual agreements with its clients render it a health care benefit program, or whether its agreements with out-of-state methadone providers do so. However, the Court need not reach

these issues, because the record demonstrates, under the standard stated earlier, that Progressive is an entity providing medical benefits, items, and services for which payment may be made by an insurance plan affecting commerce, namely Value Behavioral Health.[4]

Value Behavioral Health is the mental health portion of the state-funded program for the Pennsylvania Access to Social Services program, paying for mental health treatment for people on Medical Assistance.[5] (7-19 Tr. at 3).[6] The parties do not dispute that this program is a plan affecting commerce under which medical benefits, items, and services are provided. Indeed, as the Third Circuit articulated in United States v. Whited, 311 F.3d 259, 268 (3d Cir. 2002), "Given the complex state of modern health care delivery, it is difficult to envision any public or private health care plan or contract that does not affect commerce." Indeed, state-funded insurance plans have been found to be health care benefit programs pursuant to Section 24(b). See, e.g., United

---

[4] The parties inaccurately refer to Value Behavioral Health as "Valley" Behavioral Health in their briefs. It is also inaccurately identified as Valley Behavioral Health at least once in the transcript of Defendant's previous trial, although it is also correctly identified as Value Behavioral Health elsewhere in the transcript. In any event, it is clear that the witnesses are referring to this program.

[5] Specifically, Value Behavioral Health is the managed care organization for Washington County as part of Pennsylvania's Behavioral Health Program, which provides mental health and substance abuse treatment services as part of Health Choices, one of Pennsylvania's mandatory managed care programs for Medical Assistance recipients (who receive benefits by virtue of an Access card).

[6] References to the transcript of Defendant's trial in Case No. CR04-317 are by date of the proceedings and page number.

States v. Plotkin, No. 1:06 CR 196, 2006 WL 3762125, at *1 (N.D. Ohio Dec. 20, 2006) (holding that insurance plan through the Ohio Bureau of Workers' Compensation is a health care benefit program).

What the parties apparently dispute is whether Progressive actually received payments from Value Behavioral Health. Defendant argues that it was the Houston, Pennsylvania,[7] office of Progressive that received payments from Value Behavioral Health, not the Smallman Street office where Defendant worked and allegedly stole money.[8] She argues that the Smallman Street office received no payments or reimbursements from any private or public plan or insurer. She further argues that there is no evidence that the Houston office and the Smallman Street office were one single business entity as opposed to two separate businesses owned by the same owners. The Court disagrees, and finds that, viewing the evidence in the light most favorable to the Government, a reasonable juror could conclude that Progressive was one business entity operating two offices and that it, therefore, received payments for medical services from Value Behavioral Health.

Defendant's primary argument is that there is a lack of evidence specifically establishing Progressive's corporate structure

---

[7] Houston, Pennsylvania, is in Washington County, and the office is referred to as both the Houston office and the Washington office in the transcript. (7-18 Tr. at 159, 169; 7-19 Tr. at 2).

[8] The parties do not dispute that approximately 40-50 percent of the patients at the Houston office received benefits through Value Behavioral Health. (7-19 Tr. at 3).

at the previous trial. However, whatever dearth of evidence there may be as to this issue appears to be due to the fact that the issue was not contested at the previous trial. Indeed, the record makes it clear that it was simply assumed that the two offices were part of the same company. Both were represented to be offices of Progressive, and there is no evidence in the record that they were anything but part of the same company. Because Defendant never disputed that the two offices were part of the same company (or even raised the issue),[9] the Government did not present detailed evidence as to this uncontested point.

In any event, the record is full of testimony that supports a reasonable inference that the Houston office and Smallman Street office were part of one business entity. Constant references are made to the "Washington office," the "Houston, PA, site," or the "other location," as if the Houston office were merely an office of Progressive. (7-18 Tr. at 159, 166-67, 168-69; 7-19 Tr. at 2, 53). Indeed, every reference to the Houston office was in relation to it being another office of Progressive. Annamarie Roberto testified that she was the Project Director for both offices and that methadone was purchased from a distributor in Ohio for both offices.

---

[9]   The closest Defendant came to doing so was in making reference to the fact that only the Houston office received payments from Value Behavioral Health in seeking a directed verdict with respect to "the health care issue." (7-19 Tr. at 106). However, this argument was made at sidebar, and not before the jury. Moreover, there were two "health care issues" in Defendant's previous trial (elements three and four), and Defendant does not establish which issue he was addressing. Finally, his brief argument does not ever address the actual corporate structure of Progressive.

(7-19 Tr. at 53). Despite Defendant's argument to the contrary, the record makes it clear that supervisory personnel routinely worked at both offices. Indeed, Dana Stack, a front office supervisor at the Smallman Street office, testified that she worked at the Houston office half the time. (7-18 Tr. at 166-67). Jodi Roberto, a front office supervisor at the Houston office, not only testified that she had spent a total of a month or two working at the Smallman Street office over the past 4-5 years, she was also involved in investigating Defendant's alleged theft at the Smallman Street facility by helping review records there. (7-18 Tr. at 159; 7-19 Tr. at 3-4, 62-63).

Accordingly, the evidence in the record, viewed in the light most favorable to the Government, more than supports a finding beyond a reasonable doubt that Progressive is one entity with offices at Smallman Street and in Houston. Throughout the trial, Progressive was portrayed as one company with two offices, and no evidence to the contrary was ever produced.

Defendant argues that the alleged fact that the Houston office is identified as "Progressive Medical Specialists of Houston PA," while the Smallman Street office is identified as "Progressive Medical Specialists, Inc." demonstrates that they were separate legal entities. The Court finds no merit in this argument. First, the Court points out that, despite Defendant's objection to evidence outside of the record of the previous trial being used in deciding

this motion, the evidence regarding these alleged separate names comes from websites that were not in evidence in the original trial. Nonetheless, in any event, these websites are nothing more than informal directories of counseling and drug treatment providers. They are in no way official websites of Progressive. More relevant is that both offices are identified as "Progressive Medical Specialists, Inc.," and both list Annamarie Roberto as facility director, in the Commonwealth of Pennsylvania Department of Health, Division of Drug and Alcohol Program Licensure's approved outpatient narcotic treatment programs.

      Defendant also argues that documents regarding payment and patient information presented at trial list only one location, Smallman Street, essentially arguing that if the two offices were simply two offices of the same company, both would be listed on the company's letterhead. However, the Court points out that this fact was never emphasized at trial; there was no testimony regarding this fact, nor was there any argument relating to this fact. Defendant is, essentially, relying on the letterhead of documents introduced for other purposes. As the Court must view the facts in the light most favorable to the Government, a reasonable fact-finder, based on the evidence which consistently identified Progressive as one entity with two offices and the lack of any evidence to the contrary other than, arguably, a discrepancy in letterhead that was never highlighted or discussed at trial, could reasonably find beyond a

reasonable doubt that Progressive was indeed one business entity receiving payments from Value Behavioral Health.

As mentioned above, Defendant has argued strenuously that the Court should consider only evidence adduced at the previous trial in deciding the present motion. While, as discussed, the Court feels that it can do so, it does emphasize that, Defendant's argument notwithstanding, the Court is well within its discretion to further develop the record if the Court believes this to be necessary. Indeed, the Court did order the parties to file position statements regarding the corporate structure of Progressive. Defendant's position statement essentially argued that the Court should not consider any additional evidence and provided a supplement to her argument that the record evidence does not establish that Progressive is one entity. The Government argued that the two offices are part of one company, and presented evidence in support of this which is consistent with the record evidence establishing that the two offices were separate offices of the same entity.

Viewed in the light most favorable to the Government, the additional evidence provided by the Government, were the Court to rely upon it, further supports that a reasonable fact-finder could find that Progressive is one business beyond a reasonable doubt, particularly the Civil Complaint wherein Annamarie Roberto states that the Houston office is an office of Progressive, an S

corporation. Accordingly, the Court, were it to consider the additional filings of the parties, would find that these filings only further support the inference that Progressive is a health care benefit program.[10]

The Court having, then, determined that the evidence supports the finding that Progressive was one entity with two offices, it is irrelevant that insurance payments were made by Value Behavioral Health to one office but not the other. As long as Progressive received payments from a public or private plan, affecting commerce, under which any medical benefit, item, or service is provided to any individual, it is a health care benefit program. That the money went to one office or the other does not matter – what matters is that Progressive is a health care benefit program as required by Section 669. Section 669 does not require Defendant to have taken or embezzled the funds supplied by Value Behavioral Health, merely that she stole or embezzled money from Progressive and that Progressive received money from Value Behavioral Health.

---

[10] The Court does note that, obviously, whether the two offices are separately incorporated or part of one entity is ultimately a knowable fact – it is either one or the other. It is unfortunate that the answer to this question is not more clear from the record, although, as stated, this is largely because it was assumed, without challenge, at the first trial. Because Progressive's corporate status was not heavily litigated at the first trial, the Court could, on that ground, deny the motion without prejudice until the record is more fully developed. However, the Court believes, based on the applicable legal standard, that a reasonable fact-finder could convict Defendant beyond a reasonable doubt even on the record established at the previous trial.

## IV.     Conclusion

For all of the reasons set forth herein, Defendant's motion is denied.

s/Alan N. Bloch<br>
United States District Judge

ecf:    Counsel of record